# Shaffer's Estate.

*Specific performance—Contract—Nephew and uncle—Decedent's estates.*

A petition in the orphans' court for a decree of specific performance of a parol contract made by decedent with the petitioner for conveyance of a lot of ground with house thereon for consideration of services rendered, cannot be sustained on evidence which shows that the petitioner was a nephew of deceased ; that the latter was an old man and childless ; that for years the nephew at request of the uncle had rendered valuable serv-

ices to the latter; that the uncle had declared to several third persons that he was going to give the house and lot to his nephew because the latter had rendered him valuable services; that the nephew had made valuable improvements to the property, had married and moved into the house with his wife, and was in possession when the uncle died.

Argued Feb. 23, 1903. Appeal, No. 62., Jan. T., 1902, by P. H. Zurflieh, from decree of O. C. Lackawanna Co., No. 702, Series B, dismissing petition for specific performance in estate of John Shaffer. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Petition for specific performance.

TROUTMAN, P. J., specially presiding, filed the following opinion on exceptions to report of F. L. Hitchcock, Esq., auditor.

The contention arises upon a petition in this court, having the effect of a bill in equity to compel the specific performance by the administrators of decedent of an alleged contract or agreement, on the part of such decedent, to give or devise certain real estate in Dunmore to the petitioner, P. H. Zurflieh.

The evidence in support of the petition is practically undisputed, and we have no hesitation in saying that the effect upon our mind of all the evidence adduced is to impress us with the belief that unless there has been established a valid contract to give or devise the premises in question to the petitioner, his is a very hard case indeed.

We repeat, unless there had been a contract established, for to our mind the whole case pivots upon that proposition; the petition alleges, the proofs should sustain it. In considering this point we will carefully examine the evidence introduced to establish such contract; and we observe at the outset that the proofs are significant, not so much for what they reveal as for what they leave for inference.

1. Not a witness has been produced who testifies directly to any contractual relation at all between John Shaffer, the decedent, and Peter Zurflieh, the petitioner. So far as the evidence discloses, no person ever heard the decedent say to the petitioner, "I agree to give or devise the Cherry street property to you." Nor has any person given testimony to any communication whatever between them.

These considerations are perhaps not so important as they would be if the parties to the alleged parol contract were parent and child, according to the ruling in Allison v. Burns, 107 Pa. 50. Yet it must be considered that, in the case before us, according to much of the testimony, the relations of the parties were much more intimate and confidential than those of mere strangers. From the testimony the petitioner seems to have been the decedent's "sister's son," he held decedent's written power of attorney and one of the witnesses (P. D. Manley) testified that Mr. Shaffer declared to him, that "he felt towards Mr. Zurflieh as though he were a son, and looked upon him just as he would upon a son." And further on in his evidence that the relations between them were "just like father and son."

The rule of law is recognized in Edwards v. Morgan, 100 Pa. 330, wherein it is declared that when an attempt is made to set up a parol contract of sale against a father by his son, . . . . the contracting parties must be brought together, face to face. The witnesses must have heard the parties repeat in each other's presence. The contract is not to be inferred from the declarations of one of the parties. Quoting Ackerman v. Fisher, 57 Pa. 457, the opinion proceeds: "The burden is no lighter when the alleged contract is set up by a son-in-law. It might well be argued therefore that inasmuch as the evidence discloses a relation like father and son, that the rule to which we have adverted in Allison v. Burns, would not apply, since the parties were not strangers, but that on the contrary, by reason, if not by positive authority, it ought to be held necessary to establish a claim such as this, by more than the declarations of one party to the contract, that is, by direct testimony of witnesses to the making of the contract, whose evidence should bring the parties "face to face."

Resuming our examination of the evidence in the case at bar, we now come to another proposition.

2. None of the declarations of decedent, as testified to by the witnesses, relate either to the past or to the present; they all refer to the future. Not once is it testified that Mr. Shaffer declared, "I have agreed" or "I have promised to leave the property to him."

The decedent seems to have confined himself solely to declarations of his intentions for the future with respect to the

property, and generally of his intended testamentary disposition. Giving the language of the decedent its extreme effect, it is significant only of a voluntary intention to reward the petitioner for his services, which it is true seem to be satisfactory, or, to show his appreciation of petitioner's conduct, which he declares to be that of a son.

Let it be borne in mind that our search through the proofs offered is for some evidence of a contract or agreement; the petitioner alleges it, and the petitioner must prove it or fail in his conclusion. So far then we have found evidence in abundance of an intention on the part of the decedent to devise the Cherry street property to the petitioner, but none at all of an agreement with Zurflieh to do so; and ample evidence, too, of a disposition "to reward Peter," "to give Peter," to "leave Peter," but none of a gift actually accomplished or consummated between parties.

Does this evidence therefore come up to the strict standard of proof required in cases of this nature? The whole matter of course rests in parol, and as we have observed, standard of proof required to take such contract, if a contract had been proven, out of the statute of frauds, is exceedingly strict as of right it should be. We refer to some of the many authorities on the subject: Hart v. Carroll, 85 Pa. 508.

"In order to take a parol contract for the sale of land out of the operation of the statute of frauds its terms must be shown by full, complete, satisfactory and indubitable proof:" Allison v. Burns, supra.

"To take a case out of the operation of the statute of frauds, the gift must be shown by full, complete, satisfactory and indubitable proof, that is to say, such proof as is credible and of such weight and directness as to make out the facts alleged beyond a doubt."

The fact alleged in the case at bar, the fundamental fact upon which the whole case rests, is that there was a contract to give or devise, which the petitioner now prays may be specifically performed by a dead man's representatives. We are constrained to say that the proofs adduced do not, either to our mind, or our conscience, establish such a contract between the petitioner and decedent.

We have not lost sight of the fact that possession of the

property was taken by petitioner, apparently with the consent of decedent, but it does not follow that such possession was in pursuance of an agreement to give or devise the premises; or, to put the proposition in a preferable form, the proof of such possession does not, to our mind, either by itself or in connection with the other circumstances of the case, establish a contract to give or devise.

The same reasoning is applicable to another fact in the case, namely, the making of permanant improvements upon the property by the petitioner.   The improvement of the property may have been in pursuance of any other agreement than that of a contract to give or devise, such as, for instance, that the improvement should stand in lieu of rent, but what we are at present concerned with, is, whether the circumstances we are now considering, or any other fact in the case, or all the facts, taken together, establish such a contract as is alleged in such petition.   Here, in our opinion, is precisely where the petitioner failed, and failure here must rule the case against him.

*Errors assigned* were in dismissing exceptions to auditor's account.

*A. A. Vosburg*, with him *Thomas F. Wells*, for appellant.

*S. B. Price*, for appellee.

PER CURIAM, March 9, 1903:

This proceeding in the court below was for a decree for specific performance of a parol contract made by decedent with petitioner for the conveyance or devise to the latter, in consideration of services rendered, of a lot of ground with a house thereon erected in the borough of Dunmore, Lackawanna county.

The evidence on the part of petitioner showed that he was a nephew of deceased; that his uncle was an old man, and childless; that for years the nephew, at request of the uncle, had rendered valuable services to his uncle in the management of considerable business connected with the latter's estate.   Further, that the uncle had declared to several third persons, that he was going to give the house and lot to his nephew Peter, because he rendered him valuable services.   It was further

shown, that the nephew had made valuable improvements to the property, had married and moved into the house with his wife and was in possession when the uncle died. There is no question but that the nephew for a number of years faithfully performed valuable services for the uncle at the latter's request. Nor is there any doubt that the uncle often acknowledged to others the value of these services and declared his intention of compensating him; to several he said he would give to him or deed to him this house. But this proceeding for specific performance of a parol contract to convey land involves no question as to the value of the services nor of an intention to convey or devise in the future. Still this proof while it might be sufficient to maintain assumpsit on a quantum meruit falls short of that required to meet our statute of frauds and therefore will not sustain a decree for specific performance. An intention announced to others to compensate the nephew in the future is not sufficient. As is said in Edwards v. Morgan, 100 Pa. 330, " The contracting parties must be brought together face to face. The witnesses must have heard the parties repeat it in each other's presence. The contract is not to be inferred from the declaration of one of the parties." Adopting this rule, which is, in substance, the same in all of our many cases on the question, the learned judge of the court below in a very satisfactory opinion dismissed the petition. We affirm his decree for the reasons given by him.